CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 04, 2025

LAURA A. AUSTIN, CLERK
BY:        s/A. Beeson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **ANDY RALSTON** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00716 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **HAROLD W. CLARKE, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Andy Ralston, Pro Se Plaintiff; Ann-Marie White Rene, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants.*

The plaintiff, an unrepresented Virginia inmate, filed this civil action under 42 U.S.C. § 1983, alleging, among other claims, that prison officials retaliated against him for a past lawsuit that resulted in settlement.[1] After review of the record, I conclude that all claims against the defendants must be dismissed.

_____

[1] The Amended Complaint that is now the operative pleading in the case names the following defendants: Harold W. Clarke, former Director of the Virginia Department of Corrections (VDOC); P. Haymes, Special Investigator Unit for the VDOC; Rose Durbin, VDOC Prison Rape Elimination Act (PREA), Manager; Coffeewood Correctional Center (CWCC) Warden M. Davis; K. Soutter, ADA and PREA Coordinator; E.D. Sales, Unit Manager; T. Butler and B. Lanham, Internal Affairs; Laduke and Brown, Hearing Officers; Mattice and Wold, Counselors; Ms. Hill, Institutional Operations Manager (IOM); and Lt. Williams. Am. Comp. 1, ECF No. 39. I have substituted the proper last names for Haymes, Mattice, and Wold, who are identified in the Amended Complaint as Hinge, Mattic, and Word, respectively. In the initial Complaint, Ralston also named Ms. Ruiz, CWCC Grievance Coordinator. Although he did not include her in the list of defendants in the

I. BACKGROUND.

Ralston's pro se pleading sets forth very few dates or factual details about the events on which he bases his claims or the order in which they occurred. Although he labels a purported fifty-four claims against sixteen defendants, these claims overlap extensively, and some do not mention any defendant(s) by name. Therefore, rather than listing Ralston's claims as he has tried to set them out, I will summarize his allegations as best I can. Liberally construed, the claims in his Amended Complaint pertain to periods of 2022 and 2023 when he was confined at CWCC, a VDOC-operated prison.

To give sufficient background for this case, I take judicial notice of Ralston's prior lawsuit in the United States District Court for the Eastern District of Virginia. On March 16, 2020, Ralston sued VDOC Director Clarke and state ADA Coordinator Marano, claiming, among other things that while Ralston was confined at Sussex I State Prison (Sussex I), he was denied accommodation for his hearing loss, in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). *Ralston v. Clarke*, No. 1:20CV00290 (E.D. Va.).

---

heading of the Amended Complaint, he mentioned her in that pleading, and the Clerk's office served her with the Amended Complaint. Any other individuals Ralston may mention as defendants merely in the text of his submissions, however, have not been added or served, and I do not consider them parties to this lawsuit.

On February 8, 2022, counsel for Ralston signed a Settlement Agreement with the VDOC in the *Ralston v. Clarke* lawsuit.[2]  One of the terms of that Agreement provided that staff would install a "stationary TTY Phone" for Ralston to use at CWCC.  Am. Compl. 5, ECF No. 39.[3]  The phone was not installed in a timely manner.[4]  Ralston claims that he talked to Soutter as ADA coordinator at CWCC about getting some type of phone installed, and she replied that the attorney involved in the settlement would address that problem.

Ralston alleges that defendants Sales, Soutter, and Davis conspired "to have [Ralston] Falsely (ICA) transfer from CWCC so that the [Office of the Attorney General] could get out of the Settlement Agreement, and to avoid having anymore complaints about ADA issues."  *Id.*  On April 6, 2023, Ralston was placed in the Special Housing Unit (SHU) for allegedly doing his job by telling Sales about an inmate who informed Ralston that other inmates had been sexually harassing him.  *Id.* at 6.  Ralston was released from SHU on April 25, 2023.

---

[2] *Ralston v. Clarke*, No. 7:23CV00348 (W.D. Va.), Am. Compl. Ex. 1, at 1–3, ECF No. 44-1.  On March 1, 2022, VDOC officials transferred Ralston to CWCC.

[3] A TTY is a device to allow those with hearing or speech issues to use a telephone.

[4] Ralston alleges that the phone company described the stationary TTY phone as "obsolete," and suggested a "Captone Phone" instead.  Am. Compl. 5, ECF No. 39.  The company also indicated that they would no longer support a portable TTY phone that Ralston says was useless because of background noise.  *Id.* at 4.

On May 1, 2023, Ralston was charged with two, 229 disciplinary offenses of being in an unauthorized area. *Id.* at 7. Sales, allegedly with intent to retaliate and discriminate, wrote these charges in violation of due process because defendants Williams and Hill (not Sales) had observed Ralston's alleged offense conduct. *Id.* at 10, 11. Ralston alleges that he was "intimidated by the Defendants, Sales, [Mattice], Wold, Hill, Williams, when they conspired together to give Mr. Sales, the information to file Offenses upon [Ralston]" which violated due process and VDOC Operating Procedure (OP) 861.1. *Id.* at 7. Ralston alleges that Sales later brought two additional disciplinary charges against him, 112 and 129 offenses, in retaliation and discrimination under the ADA. *Id.* at 8. Ralston complains that in the disciplinary appeal process, Warden Davis failed to correct violations by his subordinates after reviewing their retaliation, discrimination and intimidation against Ralston during earlier proceedings.

Ralston allegedly wrote to defendant Durbin about being intimidated, but she never responded. His brother also telephoned Durbin and was told she would return the call, but she failed to do so. Ralston claims Durbin is liable for discrimination and covering up for CWCC staff. *Id.* at 7.

Ralston asserts that defendant Ruiz destroyed his grievances or refused to comply with VDOC grievance procedures. *Id.* at 8. He complains that defendant

Butler refused to give him the address for the VDOC Special Investigation Unit, so Ralston's brother had to call defendant Haymes to get it. *Id.* at 9.

According to Ralston, hearing officer Laduke violated VDOC policy by talking to witnesses Ralston had requested before the hearing, who then decided not to testify. *Id.* at 9. Defendant Lanham allegedly retaliated by failing to follow VDOC policy to investigate Ralston's third-party complaint of PREA Harassment. *Id.* at 11. Ralston alleges that the predators named in his third-party PREA complaint pressured the victim into changing his story before Ralston's disciplinary hearing. *Id.* at 11. Ralston complains that during another hearing, Brown stopped Ralston from an unspecified line of questioning after Wold allegedly changed his testimony. *Id.* at 20, 21. Ralston also complains that hearing officers must provide a written statement about the reasons for their decisions, but he does not allege that he never received written statements on the four disciplinary proceedings he challenges. *Id.* at 25.

Ralston alleges that from May 1, 2022, through June 10, 2023, Soutter as the ADA coordinator for CWCC inmates who are deaf or hearing impaired failed to protect him or investigate all his disciplinary charges. *Id.* at 13. He contends that she allowed codefendants to set him up for disciplinary offenses and failed to provide him a "Cued Language Interpreter" for hearings. *Id.* at 13. Ralston claims that Soutter and Sales discriminated against him under the ADA and violated his Eighth

Amendment rights by failing to provide the TTY phone. *Id.* at 14. He further complains that Soutter and Hill failed to investigate his disciplinary appeals and that Soutter cancelled outside medical appointments because Ralston knew when they were. *Id.* at 29. By August 21, 2023, Ralston contacted Haymes who said an investigation had been completed and appropriate action might be taken. *Id.*

One of the settlement terms provided that Ralston would not be transferred unless his security level increased. *Id.* at 15. He complains that Sales conducted an illegal classification hearing on the sidewalk. *Id.* at 16. Ralston appears to claim that many if not all the randomly described events in the Amended Complaint were part of the conspiracy to cause an increase in his security level and allow his transfer to another VDOC prison so CWCC would not have to install the TTY phone. At some point in 2023, officials transferred Ralston to Greensville Correctional Center (GRCC), where he is currently confined.

Ralston's Complaint appears to raise claims under the First, Eighth, and Fourteenth Amendments to the United States Constitution, and under the ADA and RA. He also complains that the defendants engaged in conspiracy and violated VDOC policies. All but one of the named defendants have filed a Motion to

Dismiss.[5]  Ralston has responded to the defendants' motion, making it ripe for

consideration.

## II.    DISCUSSION.

### A.    The Motion to Dismiss Standard.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint."

*Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[6]  In considering a

Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations

in the complaint as true and draw all reasonable inferences in the plaintiff's favor."

*Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  A complaint must plead facts

sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim includes factual

content that "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[C]ourts are obligated to liberally construe pro se complaints, however

inartfully pleaded*."  Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir.

---

[5]  Defendant Hill and all other defendants are represented by the same counsel, but Hill was not served until after the Motion to Dismiss was filed, and counsel did not move to include Hill in that motion.  For reasons to be discussed, I find that the claims against Hill must be summarily dismissed under 28 U.S.C. § 1915A(b)(1), which requires the court to dismiss any plaintiff's complaint about prison conditions for failure to state a claim upon which relief could be granted.

[6]  I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion, unless otherwise noted.

2017).  Liberal construction, however, does not allow me to formulate constitutional claims for Ralston based on conclusory statements alone.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.  "[T]he court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements."  *Langford*, 62 F.4th at 124.

## B.  Initial Matters.

Ralston named VDOC Director Clarke as a defendant in the initial Complaint, but later moved to dismiss all claims against Clarke.  Because Ralston included Clarke's name in the list of defendants in the heading of the Amended Complaint, the Court added Clarke as a defendant to that pleading.  As Ralston has now made clear that Clarke is not an intended defendant, Resp. Defs.' Dismissal 10, ECF No. 64, I will dismiss all claims against Clarke.

Ralston has presented most of his claims in this case under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights.  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  Ralston complains extensively that various defendants violated state policies or job responsibilities through their actions or

omissions.  However, a state official's failure to abide by a state law or policy of any kind cannot support a claim that his or her actions deprived the plaintiff of federal rights as required to state a claim actionable under § 1983.  *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

Ralston apparently sues the defendants in both their individual and official capacities for monetary damages and injunctive relief.  It is well established that a plaintiff cannot recover monetary damages under § 1983 from state officials sued in their official capacities.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").  Moreover, since filing this civil action, Ralston has been transferred to GRCC, making moot his demands for injunctive relief regarding ADA accommodations or other living conditions at CWCC.  *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there.").[7]

The overarching deficiency in Ralston's Amended Complaint is something of which the Court expressly warned him:  the need to state facts about what each

_____

[7]  As injunctive relief, Ralston also seeks to have Sales and other defendants demoted from their jobs, to have his security level and good time earning level restored to their status prior to this lawsuit, and to receive back pay for an unspecified job and time period.  He is advised that these are not forms of relief available in a § 1983 or ADA lawsuit.

defendant did, personally, to violate Ralston's constitutional rights. Rather, Ralston attempts to build his claims on conclusory legal assertions and discussions of legal concepts, cases, and VDOC policies. However, to state a claim under § 1983, a plaintiff must plead facts supporting a reasonable inference that each defendant had "personal involvement" in the alleged constitutional violation. *Iqbal*, 556 U.S. at 670. A complaint that does not plausibly allege a defendant's personal involvement in the underlying constitutional violation fails to state a § 1983 claim against that defendant. A supervisory or administrative official's responding to a grievance or a disciplinary appeal about another official's allegedly unconstitutional actions does not place liability on the responder for the supposed underlying misdeed without evidence of the responder's personal involvement in it. *Id*. Thus, prison officials cannot be held liable merely for their responses to, much less their mere participation in, the grievance or disciplinary appeal proceedings. *Pace v. Dillman*, No. 7:21CV00648, 2023 WL 6147791, at *5 (W.D. Va. Sept. 20, 2023).

For the reasons stated, I will dismiss all claims against Clarke, all claims alleging violations of VDOC policy, all claims for injunctive relief, and all § 1983 claims for monetary damages against the defendants in their official capacities. Because also I conclude for reasons to be discussed herein that Ralston fails to state any constitutional claim against any of the defendants, I will not parse out lack of alleged personal actions as to each of them.

C.  Conspiracy and Grievance Issues.

Ralston's conspiracy claims must be dismissed as conclusory.  To state a claim of conspiracy under § 1983, a plaintiff must present evidence that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).  The plaintiff must state facts that, if taken as true, would establish that each member of the alleged conspiracy shared the same conspiratorial objective, that they reached a mutual understanding to try to "accomplish a common and unlawful plan."  *Hinkle*, 81 F.3d at 421. Allegations of conspiracy that amount to nothing more than "rank speculation and conjecture" about the otherwise unconnected actions of the defendants are not sufficient, especially when each actor's conduct also suggests a nonconspiratorial interpretation. *Id.* at 422.  Ralston's allegations of conspiracy against various groups of defendants fall into this latter category of conclusory and self-serving speculation that simply cannot support a reasonable inference that any of them reached an agreement with others to violate Ralston's constitutional rights.  I will grant the Motion to Dismiss as to Ralston's conspiracy claims.

Ralston appears to include defendant Ruiz as a coconspirator based on the way she handled, or allegedly failed to respond to, his administrative complaints and

grievances.  As stated, Ralston's conspiracy claims are without merit.  But his claims concerning the grievance procedure also fail.  It is well established that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure.  An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."  *Booker*, 855 F.3d at 541.  I will grant the Motion to Dismiss as to all claims against Ruiz and as to any other defendants related to grievances Ralston filed.

## D.  Due Process Claims.

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Where an inmate asserts procedural due process claims, as Ralston does, I must first consider whether he has asserted a protectable interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest.  *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

 "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Id.*  A protected liberty interest

may arise, however, from state policies or regulations. *Id.* State statutes create a liberty interest entitled to the federal constitutional due process protections only if they protect against status changes that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or "inevitably affect the duration of" the inmate's confinement. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, a temporary increase in restrictions or loss of privileges does not implicate a protected liberty interest. More specifically, "VDOC regulations fail to place substantive limitations on official discretion that would give rise to a legitimate claim of entitlement" in retaining any specific housing status. *Garner v. Clarke*, No. 7:18CV00560, 2021 WL 969200, at *5 (W.D. Va. Mar. 15, 2021).

Only if an inmate establishes a protected liberty interest at stake, such as a loss of earned good conduct time, is he then entitled to constitutionally required procedural protections before governmental actors can deprive him of that interest.

*Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). These federal constitutional due process protections include: (1) advance written notice of the charges at least twenty-four hours prior to a hearing before an impartial decision maker; (2) the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (3) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (4) a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *Id.* at 563–71.

Ralston fails to demonstrate that any of the classification or disciplinary proceedings he challenges involved protected liberty interests. First, he does not point to any state statute creating a liberty interest for him to remain in any specific housing status within VDOC prison facilities or at any particular prison, security level, or good time earning rate. Although he complains about being placed in the SHU for about three weeks, he does not demonstrate that this housing had any effect on the length of his confinement in the custody of the VDOC under his criminal sentence or that conditions there imposed atypical and significant hardships on him, related to conditions he would have faced in the general population. Similarly, he has not alleged that his transfer to GRCC through allegedly unlawful classification proceedings at CWCC, increased his term of VDOC custody in any way or inflicted atypical or significant hardships of any kind on him, compared to normal prison

conditions. Without a protected liberty interest in maintaining a particular housing assignment or classification status, Ralston had no right to federal due process protections under *Wolff* related to the classification proceedings used to change his cell assignment or to authorize his prison transfer.

Ralston complains at length about some disciplinary proceedings. He alleges that as a penalty for one offense, he temporarily lost phone privileges, which cannot qualify as so atypical and harsh as to constitute a deprivation of a protected liberty interest. Am. Compl. 8, ECF No. 39. As to the other offenses, Ralston does not allege what the imposed penalties were. Therefore, he fails to show that these proceedings deprived him of any protected liberty interest or to show that he was entitled to any federal procedural protections that he did not receive. *See DeFour v. White*, No. 7:22CV00703, 2024 WL 1337203, at *15 (W.D. Va. Mar. 28, 2024) (dismissing the inmate's due process claim based upon his disciplinary conviction(s) because he "ha[d] not alleged what deprivation" of federally protected rights he suffered). As discussed, violations of deadlines or procedures set forth in VDOC disciplinary procedural regulations do not rise to the level of a federal constitutional violation actionable under § 1983. *Riccio*, 907 F.2d at 1469.

Ralston also complains that some defendants failed to investigate his allegations against others regarding his disciplinary charges or appeals. Courts have held that individuals have no independent right under § 1983 to PREA

investigations. *Powell v. Temple*, No. 1:22cv302 (TSE/JFA), 2022 WL 2306762, at *4 (E.D. Va. June 27, 2022). Put more broadly, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18CVP116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018). As discussed, an official's failure to follow state policies requiring investigations of any kind are not actionable under § 1983. *Riccio*, 907 F.2d at 1469.

For the reasons stated, I will grant the Motion to Dismiss as to Ralston's due process claims and any claims regarding disciplinary and classification proceedings. Pursuant to § 1915A(b)(1), I will also summarily dismiss all such claims against defendant Hill.

### E. Retaliation Claims.

"To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). Filing grievances is an activity protected against retaliation under the First Amendment. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). Merely conclusory allegations of retaliation,

however, cannot suffice to state any actionable claim under § 1983. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

"For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)). This is an "objective standard"; thus, "[w]hile the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive." *Constantine*, 411 F.3d at 500. Even so, "a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a de minimis inconvenience to her exercise of First Amendment rights." *Id.*

Ralston uses some form of the word "retaliate" numerous times in the Amended Complaint, mostly related to the disciplinary charges and the status changes that led to his transfer. Apparently, he believes the defendants knew about the past settlement agreement and the lawsuit that generated it and wanted to retaliate against him for it. Mere "knowledge of protected First Amendment activity alone does not establish a causal connection between the protected activity and the adverse action." *Hodges v. Meletis*, 109 F.4th 252, 262 (4th Cir. 2024). Indeed, Ralston

-17-

fails to state facts showing that his transfer to the SHU, any of the disciplinary charges, actions during the disciplinary proceedings, the grievances, or the classification decisions were motivated by his prior lawsuit, which allegedly concluded in May 2022, almost a year before any of the disciplinary charges were filed. "A lengthy time lapse between the defendant learning of the protected [activity] and the defendant taking the allegedly retaliatory action negates any inference that a causal connection exists between the two." *Id.* I will grant the Motion to Dismiss as to all retaliation claims.

## F.  Eighth Amendment Claims.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons," however, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49. It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To state a claim for denial of medical care, "[t]he objective element requires a serious medical condition," and "[t]he subjective prong requires the prison official to have acted with a sufficiently culpable state of mind, specifically, deliberate indifference" to an inmate's health or safety. *Langford*, 62 F.4th at 124. To satisfy the subjective prong, the official must "both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Ralston alleges that someone cancelled medical appointments because Ralston knew when they were and that he never received certain accommodations for his hearing impairment — the TTY phone and the interpreter for disciplinary hearings. Yet, he does not demonstrate that he had any serious medical need for any of these items or that he would or did suffer a threat to his health and safety through lack of these items. Thus, I cannot find any factual support in his pleadings for an Eighth Amendment claim against anyone regarding his medical care.

To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. To meet the objective prong, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Ralston's Eighth Amendment conditions claims are unclear. Perhaps he is alleging that his brief stay in the SHU imposed unconstitutional conditions on him,

although he fails to state facts about what those conditions were. Perhaps he is alleging that lack of the TTY phone and interpreter were unconstitutional living conditions for a hearing-impaired individual like himself. Yet, Ralston simply does not state facts showing that without these items he suffered any significant physical or emotional harm. *Id.* I will grant the Motion to Dismiss as to all Eighth Amendment claims.

### G. ADA and Discrimination Claims.

Throughout the Amended Complaint, e.g., at 2, 8, 23, 31, ECF No. 39, Ralston makes references to the ADA. He also repeatedly mentions some form of the word discrimination. However, he does not state facts concerning actions that any defendant took which constituted intentional discrimination against him because of his disability.

Title II of the ADA prohibits public entities from discriminating against individuals with disabilities.[8]

> "To make out a basic ADA violation, [a plaintiff] must show that he:
> (1) has a disability; (2) was otherwise qualified to get some public
> program, service, or activity; and (3) was denied that program, service,
> or activity on the basis of his disability." *Koon v. North Carolina*, 50
> F.4th 398, 405 (4th Cir. 2022). The third prong may be satisfied by "a
> failure to make reasonable accommodations." *Id.* More specifically,
> "disability discrimination includes the failure to provide reasonable

_____

[8] Ralston also mentioned the RA. While the ADA and RA call for a slightly different causation analysis, the distinction is immaterial to the case before me. *Brown v. Dep't of Pub. Safety and Corr. Servs.*, 383 F.Supp.3d 519, 551 (D. Md. 2019).

modifications that would make accommodations accessible to the disabled without causing an undue burden to the program." *Id.* at 406.

*Newman v. Cooper*, No. 7:23-CV-00431, 2025 WL 28470, at *3 (W.D. Va. Jan. 3, 2025).

The term "disability" is defined by the Act to mean "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The defendants assert that Ralston's ADA claim fails because he does not prove that he has a qualifying disability. While his Amended Complaint is rambling with few factual details, I do think Ralston has submitted sufficient facts and loosely incorporated exhibits on which he may be able to show that he has significant hearing loss that limits some of his daily activities. *Koon*, 50 F.4th at 406.

The ADA legal analysis is more complicated when the only relief the plaintiff can obtain is monetary damages. It is undisputed that the ADA and RA apply to inmates in state prisons, but that they do not support lawsuits for monetary damages against prison employees acting in their individual capacities. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). An ADA/RA claim for monetary damages will lie only against the public entity or agency itself, or its directors or administrators in their official capacities, if the alleged denial of disability accommodations also violated the plaintiff's rights under the Fourteenth

Amendment. *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020). Ralston "must

both make out a violation of the ADA's reasonable-accommodation right and show

that the violation was intentional," or at a minimum, arose from the defendant's

deliberate indifference. *Koon*, 50 F.4th at 403.

Since Ralston has now been transferred away from CWCC, Ralston can seek

only monetary damages for any alleged, past violation of his rights under the ADA

while he was confined at CWCC. The violation he alleges is failure to install a TTY

phone.[9] In this context, "the deliberate-indifference standard starts with determining

whether there was — objectively speaking — an ongoing or likely violation of some

federal right," and then "requires that [plaintiff] prove that some [state] official with

the authority to address his problem both had knowledge of his federally protected

rights and nonetheless failed to help him." *Id.* at 404, 407.

Ralston has not stated facts disputing the evidence that CWCC did not have a

working stationary TTY phone in 2021, and did not have the option to install one,

since the telephone service described this device as obsolete. CWCC apparently had

a portable TTY phone that CWCC inmates could use, but Ralston said background

noise made it ineffective, and the phone company started refusing to make further

---

[9]  I want to be clear — it is not the function of this court to enforce the settlement agreement to which Ralston agreed in a lawsuit before another district court. Rather, I view his claim before me as failure to provide a specialized telephone system for hearing disabled inmates at CWCC.

service calls for it.  Nor does Ralston show that installing any similar device for hearing impaired inmates was possible or affordable so as to qualify as a reasonable accommodation without "causing an undue burden" to the CWCC telephone budget. *Id.* at 406.  Similarly, Ralston does not state facts showing that as an inmate with hearing aids, he could not effectively utilize the phone system provided for hearing inmates.  Finally, I cannot find that Ralston has alleged facts on which he could prove intentional discrimination on the part of Souter or the warden, or any other defendants in this lawsuit, based on their failure to install a TTY phone.  I conclude that Ralston has not stated facts to support a claim for damages under the ADA or RA.  *Id.* at 407.

## H.  State Law Claims.

In various places in the lengthy Amended Complaint, Ralston appears to assert various violations of state law — disciplinary charge stacking, violations of state-required due process protections, and so on.  In light of my conclusion that the defendants' Motion to Dismiss as to the federal claims must be granted, I decline to exercise supplemental jurisdiction over the inmate's conclusory claims under state law, pursuant to 28 U.S.C. § 1367(c).  Rather, I will dismissal all such state law claims without prejudice.

## III.  CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1.  All claims against defendant Clarke are DISMISSED, as agreed by Ralston;

2.  All claims against defendant Hill are summarily dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted;

3.  All state law claims are DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367(c); and

4.  The Motion to Dismiss, ECF No. 45, is GRANTED, and all federal claims against the remaining defendants are DISMISSED.

A separate Judgment will be entered.

ENTER:  August 4, 2025

/s/  JAMES P. JONES
Senior United States District Judge